## UNITED STATES v. NATIONAL ASS'N OF REAL ESTATE BOARDS et al.

### Criminal No. 950—47.

United States District Court
District of Columbia.
June 4, 1948.

Roger J. Whiteford and John J. Wilson, both of Washington, D. C., for National Ass'n Real Estate Boards.

William E. Leahy, of Washington, D. C., for Washington Real Estate Board.

Victor H. Kramer, Herbert N. Maletz, C. Heyward Belser, and Joseph P. Kelly, Jr., Attys., U. S. Department of Justice, all of Washington, D. C., for the United States.

CURRAN, Justice.

Last Tuesday and Wednesday there was argued before this court two motions for judgments of acquittal; one made by the National Association of Real Estate Boards and one made by the Washington Real Estate Board, two co-defendants in this suit brought by the United States against the two defendants, in the form of an indictment, charging both of the defendants with a conspiracy between themselves and co-conspirators not named, in violation of Section 3 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 3.

Authorities have been presented very capably by counsel on both sides in this matter, and have been of great assistance to the court in coming to a conclusion.

As I see it, the question here is: What is the nature of the business of the defendants, that is the National Association of Real Estate Boards and the Washington Real Estate Board and its members, and are the constitutions, the by-laws, and the codes of ethics or any subdivision thereof, in their direct effect in restraint of trade or commerce in the District of Columbia? Is the business of the defendants interstate commerce in the sense of that word as it has been used and understood in the decision of the courts, or is it a business which is an aid or facility to commerce and which, if it affects interstate commerce thereon in the District of Columbia, does so only in an indirect and incidental manner?

The facts of the matter are that the defendants, who are real estate men, have entered into voluntary associations for the purpose of bettering the conduct of their business, and after entering such associations they still continue their individual businesses in full competition with each other, and that the associations themselves, as associations, do no business whatever, but are simply a means by and through which the individual members who have become thus associated are the better enabled to transact their business, to maintain and uphold it in the proper way, and to create methods of preserving integrity amongst the members of the associations.

In my view the charges of a real estate broker on account of his personal services are nothing more than charges for aids or facilities furnished to clients whereby their objects may be the more easily and readily accomplished. It is my view that charges or commissions of real estate brokers in the District of Columbia are based on personal services performed for clients, and their effect in the sale of real estate are not directly connected with or form a part of interstate commerce in the District of Columbia, because I feel that charges for services of this character and nature do not immediately touch upon or act upon nor do they directly affect the sale of real estate in the District of Columbia.

Of course, indirectly and as an incident, they may enhance the cost to the owner of real estate, or they may add to the price paid by the purchasers, but they are not, in my opinion, charges which are directly laid upon real estate itself. Rather are they charges for facilities given or provided to clients in the course of the sale of real estate.

Here in this case the conspiracy condemned by the statute is one whose direct and immediate effect is a restraint upon trade or commerce in the District of Columbia. As I say, charges for such facilities, in my opinion, are not restraints upon the trade or commerce, although, as I have indicated, the total cost of selling the real estate may be increased.

The right of the owners of real estate in the District of Columbia to sell their own property in any way whatever is not affected or touched by the agreement in question, while the privilege of having their property sold for the real owner, with the aid of a broker, is a privilege which they are charged for and which is not attached to their right to sell their own property.

If charges of the nature that I have mentioned do not amount to a regulation of interstate trade or commerce in the District of Columbia because they touch it only in an indirect or remote way, or else because they are in the nature of compensation for privileges as a facility for that trade or commerce, it would for a like reason seem clear that agreements relating to the amounts of such charges among those who furnish the privileges or facilities are not in restraint of that kind of trade. While the indirect effect of the agreements may be to enhance the expense to those engaged in the business, yet as the agreements are in regard to compensation for privileges accorded for services rendered as a facility to commerce or trade, they are not unreasonable or illegal as a restraint thereon; and this is what, in brief, was enunciated by the Hopkins case (Hopkins v. United States), in 171 U.S. 578, 19 S.Ct. 40, 43 L. Ed. 290.

In other words, where the subject matter of the agreement does not relate to or act upon or embrace interstate commerce

in the District of Columbia, where the undisputed facts clearly show that the purpose of the agreement was not to regulate, obstruct, or restrain commerce, but that it was entered into with the object of properly and fairly regulating the transaction of the business in which the parties to the agreement were engaged, such agreement will be upheld, in my view, as not within the statute, where it can be seen that the character and terms of the agreement are well calculated to attain the purpose for which it was formed and where the effect of its formation and enforcement upon interstate trade or commerce in the District of Columbia is in any event but indirect and incidental and not its purpose or object, and so said the Supreme Court of the United States in the Anderson case (Anderson v. United States), 171 U.S. 604, 19 S.Ct. 50, 43 L.Ed. 300.

And I was particularly impressed by the language of the court in the Duluth case, (State v. Duluth Board of Trade), 107 Minn. 506, 544, 121 N.W. 395, 410, 23 L.R.A.,N.S., 1260, where it was said that when the legality of a particular act is to be tested by whether it violates general statutory prohibitions upon restraints of trade or commerce, courts have given various reasons for their conclusions, and it seems that if any one thing may be said to be the test, it is the effect upon competition. The Court said:

" * * * Combinations are not per se illegal, any more than are contracts, agreements, and understandings generally; but, when the purpose of either is to destroy competition in trade or commerce, the particular transaction falls within the prohibitions of the anti-trust statute. * * * it does not follow that every contract or combination which in any degree tends to restrict competition is illegal. So strict a rule would invalidate innumerable ordinary business transactions which are unobjectionable and necessary that business shall not completely stagnate."

Contracts and combinations which tend to promote business and which only remotely, incidentally, and indirectly restrain competition are not forbidden.

The Court, in the Duluth case, also said: " * * * If the necessary effect of the combination is to stifle or to directly or necessarily restrict free competition, it is under the ban of the law, whatever may have been the intention of the parties. But if 'it promotes or but incidentally or indirectly restricts competition, while its main purpose and chief effect, are to foster the trade and to increase the business of those who make and operate it, then it is not a contract, combination, or conspiracy in restraint of trade within the true interpretation of this act."

■ My view of this case is that agreements to regulate the rate of commission to be paid for personal services to real estate brokers in the District of Columbia standing alone have never been held to be agreements in restraint of trade, and it is only when connected with other contracts or other conduct or other actions that they come within the purview of the Sherman law.

■ It is common knowledge that competition between real estate brokers is in fact strong, and success in getting the business depends not upon offering to transact for less than the uniform rate but upon the skill and facilities possessed for obtaining the highest price for the property from the purchasers.

There is no fixed price at which sales of property must be made in the District of Columbia.

Says the court in the Duluth case, it is inconceivable that no agreement which requires all real estate brokers who work on a commission basis and who are members of the board, to charge the same rate of commission for the same service, can materially affect or control the price at which real estate sells, or at which the article sells. In the Duluth case the article was not real estate. I used that in my own language, paraphrasing the language of the court in the Duluth case.

Of course, in a remote and indirect way, every charge and item of expense which attaches to the selling of real property affects to some extent the prices received by the owners and paid by the ultimate purchaser.

I have reviewed the cases, and I cannot come to any other conclusion than that the Sherman law must have a reasonable construction or else, says the Supreme Court in the Hopkins case [171 U.S. 578, 19 S.Ct. 48], "there would scarcely be an agreement or contract among business men that could not be said to have, indirectly or remotely, some bearing upon interstate commerce, and possibly to restrain it."

Counsel have conceded that in this case there must be an unreasonable restraint, but I am not convinced that the mere fixing of a rate of commission for real estate brokers, for personal services rendered as an aid or facility to the owner of the property in the District of Columbia, standing alone and with no other action or conduct, is per se an unreasonable restraint.

For these reasons and because of the authority that appeals to me in the Hopkins and Anderson cases, and in the Duluth case in Minnesota, the motions of the defendants for judgments of acquittal in this case are granted.